Henry A. Hutchins v. Commissioner.
Hutchins v. Commissioner
Docket No. 16557.
United States Tax Court
1949 Tax Ct. Memo LEXIS 81; 8 T.C.M. (CCH) 809; T.C.M. (RIA) 49220; September 7, 1949
*81 Alan E. Gray, Esq., Security Title Insurance Bldg., Los Angeles, Calif., for the petitioner. R. H. Kinderman, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined against petitioner a deficiency in income and victory tax for the calendar year 1943 in the amount of $14,168.57. Three issues are presented. Did the Commissioner err in determining: (1) That petitioner was not a resident of and domiciled in the State of Arizona during 1942 and 1943 and hence his entire income for those years was his separate and not community property? (2) That regardless of petitioner's residence: (a) his income from Hamilton Associated Industries was his separate property; (b) that part of his 1942 income from National Union Radio Corporation was earned in 1941 and such portion constituted his separate property? (3) In denying claimed deduction of $271.55 as business expenses? Petitioner's claim for long term capital gain was abandoned. Findings of Fact Petitioner is an individual residing in Tucson, Arizona, and filed his income tax returns for the years 1942 and 1943 with the collector of internal revenue *82 for the district of Arizona. His wife, Barbara Kerley Hutchins, to whom he was married in 1919, and with whom he has since lived, also filed her separate income tax returns for each of said years with the same collector, these returns being filed on the community property basis. Petitioner's and his wife's returns were both on a cash accounting basis and the address on each was 2221 East 1st Street, Tucson, Arizona. Petitioner was born September 17, 1896, in Portsmouth, Virginia, and his wife in New York City, September 3, 1900. He graduated from the United States Naval Academy early in 1918; served in World War I; thereafter attended Massachusetts Institute of Technology, completing the course there in 1921, and resigned from the Navy in 1923. From 1930 to 1935 petitioner and his family (wife and three children) lived in Darien, Connecticut, in a house which he owned, (he sold this house in 1940) and during this period he was employed as sales manager by National Union Radio Corporation, whose main office was in New York City, and whose plant was in Newark, New Jersey. This job was mainly a "road job" requiring that he spend more time away from than at home. In 1935 petitioner *83 and his family moved to Wilmette, Illinois, a suburb of Chicago, where they lived in a rented house until 1938. During this period he was in the employ of Western Advertising Agency as accounting executive. This was not a road job and his work was in Chicago. Dur in part to his wife's health, who had developed a spot on her lungs, in the spring of 1938 petitioner moved his family from Wilmette to 76 Ranch in Arizona, 95 miles east of Tucson. Petitioner accompanied his wife and children to Arizona, but after doing so returned to his work in Chicago, but the family remained in Arizona until June 1939. In the spring of 1939 petitioner again became an employee of National Union Radio Corporation [1] with work in the east and headquarters in New York, and continued such employment throughout the taxable years. In June 1939 petitioner's family motored east in the family automobile, with an Arizona license tag, to join petitioner and they all lived together for about three months in a small rented house in Far Hills, New Jersey. In the early *84 fall of 1939 petitioner and his family returned in the family automobile to the 76 Ranch in Arizona where the children again entered school, and the family remained there while petitioner returned to his work in the east. On May 28, 1940, petitioner leased in writing, for the period beginning August 1, 1940, to June 1, 1941, a furnished dwelling at 2231 East Speedway, Tucson, Arizona, which was occupied by his family during that period. Petitioner's furniture had been stored in Chicago until May 1941, when petitioner rented an unfurnished house at 2221 East First Street, Tucson, to which the furniture was then moved and at which address he and his family lived until July 1944, when they moved to a ranch 45 miles south of Tucson which he had bought in 1943. In July 1940 petitioner, while in Chicago, told Lee Garrett, now Superior Court Judge, of Tucson, that he was becoming a resident of Arizona and had decided to make that state his home. In December 1940 petitioner, while in Tucson, was in Judge Garrett's office consulting him about legal matters, and reiterated his decision as to Arizona citizenship. The official records of Pima County, Arizona, of which Tucson is county seat, *85 show that petitioner's wife registered as a voter in that county on July 24, 1940, and that she voted in elections held there in 1940, 1942 and 1944. Petitioner voted in Arizona in 1944; his last vote cast prior to 1944 was in 1936 in Wilmette, Illinois. In either 1940 or 1941 petitioner was told by a certified public accountant in Tucson that he was qualified to file his income tax returns in Arizona on a community property basis, but in both 1940 and 1941 he filed same with the collector of internal revenue in New York, and in both returns gave his address the same as that of his employer, viz.: 57 State Street, Newark, New Jersey. For a number of years prior to 1942 he had filed his Federal income tax returns with the collector of internal revenue in New York City regardless of his place of residence. From January 1, 1942, to October 8, 1942, petitioner spent fractional parts of 190 days in New York City, also considerable time in Lansdale, Pennsylvania, in connection with a new plant his employer was building there, and made frequent trips to Washington, D.C., where priorities for material and approval of credit and financing were obtained. While in New York he checked in and *86 out of the Hotel Carteret. During this period he made occasional business trips to Chicago, and went to his home in Tucson, Arizona, about every two months. Petitioner's absence from his wife and children was due to business reasons for the purpose of engaging in employment. There was no estrangement between petitioner and his wife and no agreement or intention upon their part to establish or maintain separate domiciles and their domicile was always the same. Before moving to Arizona they had three children, the fourth was born in Arizona. From May 1, 1941, and continuously throughout the years 1942 and 1943 petitioner's residence and domicile was in the State of Arizona. From October 1942 to May 1944, petitioner was a Lieutenant Commander in the United States Navy, stationed at Tucson, Arizona, his duties being executive officer in the Navy Training School located there. While in Tucson, in September 1942, negotiations for his entry into the Navy were begun, but he entered the services while in New York City, and his transportation from New York to Tucson, when his service began, and from Tucson to New York, when it terminated, was paid for by the Navy. Prior to his discharge from *87 the Navy, his former employer, the President of National Union Radio Corporation, made several trips to Tucson seeking to reemploy him, and as a result he accepted employment with them, effective upon his discharge from the Navy, and he remained with them for about a year. After his discharge from the Navy, he continued his connection with Hamilton Associated Industries of Chicago and was in that city about once a month. Hamilton Associated Industries was a partnership of petitioner and V. Hamilton, whose business was purely sales. It first began during the depression when petitioner and Hamilton were both in the sales division of National Union Radio, and with their employer's consent, in order to supplement their income, they began selling goods manufactured or for sale by others. The business was on a commission basis on sales made. During the taxable years petitioner's income therefrom was for his personal services consisting principally of consultation and advice. Petitioner's annual salary from National Union Radio Corporation was $7,500, plus commissions, which salary was paid monthly until October 30, 1942. The company's fiscal year ended on April 30 of each year, and of *88 the commissions petitioner received from them in 1942, $9,200 thereof represented commissions earned from May 1, 1941, to December 31, 1941. Petitioner's income tax returns included his salary and commissions from National Union Radio Corporation, his partnership income from Hamilton Associated Industries, and his salary as a naval officer, all of same being reported as community income, and one-half thereof was included in the separate returns of his wife. Petitioner had no agreement with his wife with respect to his income. Other than the allegations contained in his petition and income tax returns, petitioner offered on evidence to show the amount and nature of the business expenses for which deduction was claimed. In respondent's letter of deficiency he determined: (a) that petitioner's 1942 tax was greater than that for 1943, and recomputed same as provided in section 6(d)(1) of the Current Tax Payment Act of 1943; (b) that the claimed business expense deduction was excessive in the amount of $271.55; (c) that all of petitioner's income for both 1942 and 1943 was his separate income. Opinion 1. Arizona being a community property state, if the petitioner was domiciled *89 and had his legal residence there in 1942 and 1943, respondent erred in determining that his income for those years was his separate property and not the community property of himself and wife. The question of domicile depends upon the particular facts in each case, but certain well defined legal principles govern such a determination. A definition of what constitutes domicile, supported by numerous authorities there cited, we quote from Mertens Law of Federal Income Taxation, Vol. 3, page 54, § 19.31, as follows: "The words 'residence' and 'domicile' are often confused; a person may have several places of residence but only one domicile. Any temporary place of abode may be a residence, but a domicile is a place of abode fixed and permanent or, at least, of indefinite duration. Time alone does not mark the distinction, for a temporary residence may extend over months or even years, while a domicile may be established by the first moment of occupancy. * * * the question being largely one of intention; * * * determined from actions and declarations, and conduct, * * *" We have found May 1, 1941, as the date the evidence shows exclusively that the petitioner by his "actions and *90 declarations and conduct" had chosen to make Arizona his home and not merely a place of residence. The evidence indicates such a decision may have been made at an earlier date. For three years then he and his family had been residents of Arizona, his children had attended schools there throughout this period, his wife had registered as a voter and voted in 1940, and in 1940 he had publicly declared that he was making Arizona his home. Prior to May 1941, they had occupied rented furnished quarters but in that month he leased for one year an unfurnished dwelling house and removed to Arizona his furniture and household effects which had been stored in Chicago since he left there in 1938. Also shortly prior thereto he had sold his home in Darien, Connecticut, which he had owned for many years. Definitely it appears that from May 1, 1941, including the taxable years here involved, Arizona was his place of domicile. At the time of the hearing in this proceeding, Arizona had continuously been his domicile for nearly eight years. Respondent contends that petitioner in 1942 and 1943 had his domicile in New York City. He stresses the fact that in 1942 and for many years prior thereto New York *91 had been petitioner's business headquarters where he spent a major portion of his time; also that in 1941 and continuously for many prior years petitioner had filed his income tax returns with the internal revenue collector in New York City and had given his address in such returns as New York City, and also in his employment contract he was referred to as "residing in New York." These facts alone are not sufficient to prove domicile, and especially so when considered with the other evidence. Many persons work in one state, have their homes in another and for convenience file their income tax returns in the district where they work. At no time did petitioner have any fixed abode in New York. He checked in and out of hotels. If he had been a single man, respondent's contention would be more persuasive, but since 1919 he had been married, always living with his wife and children, and at no time had they lived in New York. The nature of his work required him to be away from home a great deal, but this did not change his domicile from that of his family. "Temporary residence, even if long, merely for the purpose of transacting business or engaging in employment is not sufficient for *92 the acquisition or change of domicile. 28 C. J. Secundum 19, citing in footnote 12, ; ; (Cal.)." There is no merit in respondent's contention that petitioner's wife had a separate domicile in Arizona while petitioner had his in New York. Petitioner's domicile was never in New York and the evidence does not warrant a holding that petitioner and his wife ever maintained separate domiciles. The presumption is that the domicile of a married man is the place his family resides. (Tenn.); ; ; . There is a conflict in the authorities as to whether a wife living with her husband on amicable terms can acquire, with her husband's consent, an independent domicile. Some authorities deny her this right. In ; reversing In ; *93 also . In support of separate domiciles, respondent cites , and , the facts in neither of which fit the instant case. In the first, prior to the marriage, it was expressly agreed that after the marriage the wife would continue to maintain her domicile in New York City, while the husband was a resident of Virginia. No such agreement is evident here. And in the second, the wife had been living separate and apart from her husband for twenty years, and no marital relations had existed between them within that time. 2. (a) We agree with respondent that if the income received by petitioner from the partnership Hamilton Associated Industries was income from capital acquired before he became a legal resident of Arizona and while his domicile was in a non-community property state, such income would be his separate property. ; . However, from the record we have found that such income in the *94 taxable years was not from capital invested, but for personal services rendered by the petitioner in those years, and hence was community property. (b) We also agree that income earned by petitioner before his domicile in Arizona but paid to him thereafter would be his separate property. Furthermore, that since National Union Radio Corporation's fiscal year ended on April 30, part of the bonus payments they made to petitioner in 1042 was earned in 1941, but since all of such 1941 earnings were subsequent to May 1, 1941, when he became a legal resident of Arizona, no part of same would be his separate property. We reverse the Commissioner's determination that any part of petitioner's income for 1942 and 1943 was his separate property, and hold that all of same was community property of himself and wife. 3. On the ground that petitioner has failed to make proof of his claim of deduction for business expenses, we sustain Commissioner's determination on this issue. . Decision will be entered under Rule 50. Footnotes
1. In a subsequent substituted employment contract with this company dated May 1, 1941, petitioner was referred to as "residing at New York."↩